**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**DEBRONDA L. KENNEDY,**

    **Plaintiff**

**v.**                                                                                    **Case No:**

                                                                    **JURY TRIAL DEMANDED**

**KELLY SERVICES, INC.**

    **Serve: CT Corporation System
          4701 Cox Rd., Suite 285
          Glen Allen, Virginia 23060**

**and**

**HEALTH NET FEDERAL SERVICES, LLC,**

    **Serve: CT Corporation System
          4701 Cox Rd., Suite 285
          Glen Allen, Virginia 23060,**

    **Defendants**

## COMPLAINT

COMES NOW the Plaintiff, Debronda L. Kennedy ("Plaintiff"), by counsel, and as and for her Complaint against the Defendants Kelly Services, Inc. ("Kelly") and Health Net Federal Services, LLC ("Health Net") (collectively "Defendants") states as follows:

**Parties**

1. Plaintiff is a natural person and a resident of the Commonwealth of Virginia and has resided in the City of Hampton, Virginia at all relevant times.

2. Kelly is a Delaware corporation with its principal place of business being located in Michigan. At all relevant times, Kelly has maintained an office in Newport News, Virginia.

Kelly is, *inter alia*, a personnel staffing company. Upon information and belief, Kelly employs more than 500 persons.

3. Health Net is a Delaware limited liability company with its principal place of business being located in California. At all relevant times, Health Net has maintained an office and call center facility in Hampton, Virginia. Health Net is involved with, *inter alia*, third-party health insurance administration. Upon information and belief, Health Net employs more than 500 persons.

### Jurisdiction and Venue

4. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States, specifically, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants conduct business within this judicial district and division and the events complained of herein took place within this judicial district and division.

### Exhaustion of Administrative Remedies

6. Prior to instituting this civil action, Plaintiff timely filed respective administrative claims against the Defendants alleging disability discrimination with the Norfolk office of the Equal Employment Opportunity Commission ("EEOC") following her termination on or about August 19, 2016. *See* Exhibits 1 and 2.

7. On or about September 10, 2018, the EEOC mailed respective "right to sue" letters to Plaintiff after failing to resolve the Plaintiff's administrative claims. *See* Exhibits 3 and 4. Plaintiff received the letters approximately three days after mailing. Plaintiff has filed the

instant civil action within ninety (90) days of her receipt of notices authorizing her to file this civil action.

## Facts and Background

8. Plaintiff began employment with the Defendants on or about September 28, 2015. Plaintiff was initially hired by Kelly, but was assigned to work for Health Net at its Hampton call center facility as a "choice appointing representative."

9. Plaintiff's job duties included data entry as well as receiving information regarding requested medical appointments or treatments for beneficiaries of medical insurance policies and/or plans that Health Net administered and calling such beneficiaries and health care providers to confirm and help set up such appointments or treatments. Plaintiff primarily placed telephone calls as opposed to receiving telephone calls.

10. Upon or shortly after her hire, Plaintiff notified Defendants that she suffered from narcolepsy and sleep apnea, which sometimes caused her to suddenly fall asleep. On or about October 28, 2015, Plaintiff's treating physician directly provided a note to Kelly stating that Plaintiff had "a diagnosis for narcolepsy with episodes of cataplexy (which means that she could fall asleep at any moment)."

11. Upon completion of training at Health Net, the supervisor of the team to which Plaintiff was assigned acknowledged receipt to Plaintiff of an email or other notice from Kelly regarding Plaintiff's sleep-related disorders.

12. Plaintiff's narcolepsy and/or sleep apnea are physical impairments that substantially limit one or more major life activities and/or major bodily functions, *to wit*, alertness, consciousness, breathing, brain function, working and neurological function. Such

condition is a disability pursuant to 42 U.S.C. § 12102. Plaintiff is a qualified individual under the Americans with Disabilities Act.

13. Plaintiff advised Defendants that she required reasonable accommodations such as being allowed to periodically stand and stretch while working. Furthermore, Plaintiff advised Defendants that, if she did fall asleep while seated at the job, she could be easily awakened by a nudge or tap.

14. Plaintiff performed her job to the reasonable expectations of her employers with the reasonable accommodations described in Paragraph Thirteen. Although Plaintiff would sometimes fall asleep at her desk, she would quickly be woken by co-workers or supervisors and would immediately resume work.[1] At all times, Plaintiff was able to perform the essential functions of her position with the reasonable accommodations described herein.

15. During the spring of 2016, Plaintiff was placed under a new supervisor.

16. During a staff meeting on or about June 14, 2016, Plaintiff's new supervisor made derogatory comments to Plaintiff including asking her if she was going to fall asleep during the meeting.

17. On or about June 22, 2016, Plaintiff's new supervisor asked Plaintiff if she suffered from attention deficit hyperactivity disorder ("ADHD").

18. On or about July 7, 2016, Plaintiff's new supervisor placed her on a performance improvement plan, which included a thirty-day period to increase her daily production rate. During that meeting, a human resources manager for one or both Defendants asked Plaintiff to provide further medical documentation of her condition, despite having already been given notice of such as well as documentation.

---

[1] Plaintiff worked in an open call center area in close proximity to supervisors and co-workers.

19. Plaintiff subsequently attempted to follow up with the human resources manager regarding scheduling and time off in order to undergo a new sleep study, but was unsuccessful in doing so.

20. On or about August 7, 2016, Plaintiff's new supervisor advised Plaintiff that she had met her thirty-day performance improvement plan. At that time, no other performance-related concerns were relayed to Plaintiff.

21. On or about August 19, 2016, the Defendants terminated Plaintiff for the stated reason of the new supervisor having allegedly seen Plaintiff asleep, despite their knowledge of her disability and of her ability to perform the essential functions of her position with the reasonable accommodations described herein.

## Joint Employment

22. Although Plaintiff was initially hired by Kelly and assigned to Health Net, both Kelly and Health Net were her joint employers.

23. Upon information and belief, either or both Defendants had authority to hire and fire Plaintiff.

24. Upon information and belief, agents, employees and servants of both Defendants exercised day-to-day general supervision and disciplinary power over Plaintiff.

25. Health Net furnished the equipment used and the place of work to Plaintiff.

26. Plaintiff worked exclusively at Health Net from her hire on September 28, 2015 to her termination on August 19, 2016. She had no other workplace assignments during that period.

27. Upon information and belief, Health Net provided Plaintiff with formal or informal training.

28. To the best of Plaintiff's understanding, the workplace, including supervisory personnel, was a mix between persons employed solely by Health Net and persons assigned to Health Net through Kelly. Plaintiff's job duties were akin to a regular Health Net employee's duties.

29. Plaintiff considered herself to be in an employee-employer relationship with both Defendants, although Kelly handled her payroll and taxes.

30. Both Defendants exercised common-law control over Plaintiff.

**COUNT I --DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C § 12101, *et seq*.**

31. The allegations of Paragraphs One through Thirty are incorporated by reference as if set out in full herein.

32. Defendants terminated Plaintiff's employment because she suffered from a disability, and for reasons arising from discrimination against Plaintiff on account of that disability.

33. The termination of Plaintiff constituted a violation of the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*. (including § 12117 which cross-references the jurisdictional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(l) and (3)).

34. The Defendants' conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

35. Defendants' acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: treating Plaintiff in a different manner because of her disability, and terminating her because of her disability and in spite of her ability

to perform the essential functions of her position with the reasonable accommodations described herein.

36. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

37. Due to the severity of Defendants' conduct, Plaintiff is also entitled to punitive damages.

WHEREFORE, the Plaintiff, Debronda L. Kennedy, by counsel, prays that this honorable Court grant her relief as against the Defendants, jointly and severally, including, but not limited to:

    a. past lost wages and benefits;

    b. future lost wages and benefits;

    c. compensatory damages;

    d. punitive damages;

    e. pre- and post-judgment interest;

    f. attorney's fees and litigation costs; and

    g. such other compensatory and equitable relief as deemed just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: December 11, 2018.

                                              Respectfully Submitted:

                                              _____/s/_____
                                              Steven B. Wiley (VSB No. 47531)
                                              WILEY LAW OFFICES, PLLC
                                              440 Monticello Ave., Suite 1817

Norfolk, Virginia 23510
(757) 955-8455
(757) 319-4089 facsimile
swiley@wileylawoffices.com

*Counsel for Debronda L. Kennedy*